**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALEX TAKSIR and ORIT TAKSIR,** : | | |
| **on behalf of themselves and all others** : | | |
| **similarly situated,** : | | |
|                 **Plaintiffs,** : | | |
| : | | |
| **v.** : | | **CIVIL ACTION NO. 16-5713** |
| : | | |
| **THE VANGUARD GROUP, INC.,** : | | |
|                 **Defendant.** : | | |

**MEMORANDUM OPINION**

RUFE, J.                                                                                               MAY 26, 2017

Before the Court is the Motion to Dismiss of Defendant the Vanguard Group, Inc. For the reasons that follow, the motion will be granted in part and denied in part.

**I. BACKGROUND**

This proposed class action alleges that Defendant, an investment company, overcharged customers on securities transactions. Plaintiffs Alex Taksir and Orit Taksir, who are married, hold approximately $600,000 in assets with Defendant, qualifying them for Defendant's "Voyager Select" program, which is available to clients with between $500,000 and $1 million in assets.[1] Plaintiffs allege that, under the terms of the program posted on Defendant's website, they should be charged a $2.00 brokerage commission for each securities transaction executed using Defendant's services. However, on May 12, 2016, Plaintiffs purchased shares of Nokia Corporation (Mr. Taksir purchased 1,100 shares and Mrs. Taksir purchased 384 shares) and each was charged a $7.00 commission instead.

---

[1] The allegations are taken from Plaintiffs' complaint. Doc. No. 1. Plaintiffs allege that the Court has jurisdiction pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy exceeds $75,000.

Mr. Taksir complained about the alleged overcharge, but was informed by Defendant that Plaintiffs' trades were not eligible for the $2.00 commission due to "IRS nondiscrimination rules"—an exception to the Voyager Select program not listed on Defendant's website. Plaintiffs allege that no such IRS rules exist, and that Mrs. Taksir was charged $2.00 for another purchase of Nokia shares six weeks later, suggesting Defendant's application of the "IRS nondiscrimination rules" is arbitrary. Plaintiffs allege that other Vanguard clients are similarly being overcharged on securities transactions.

Plaintiffs filed this lawsuit on behalf of themselves and a proposed class of all other Vanguard clients who "purchased securities pursuant to Vanguard's Voyager Select program and/or other Vanguard Enhanced Services . . . from the inception of the Enhanced Services through the present . . . and paid a commission and sales charge greater than the terms prescribed by the respective services."[2] Plaintiffs assert two claims: (1) breach of contract; and (2) violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL").[3] Defendant has moved to dismiss, arguing primarily that Plaintiffs' claims are preempted by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").[4] Defendant also argues that Plaintiffs' UTPCPL claim fails because Plaintiffs have not pleaded justifiable reliance.

## II. LEGAL STANDARD

This motion is decided under the familiar standard articulated by the Supreme Court in *Twombly* and *Iqbal*, under which dismissal for failure to state a claim is appropriate if the complaint fails to allege facts sufficient to establish a plausible entitlement to relief.[5] In

---

[2] *Id.* ¶ 1.

[3] 73 Pa. Cons. Stat. § 201-1 *et seq.*

[4] 15 U.S.C. § 78bb(f)(1).

[5] *E.g.*, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

evaluating Defendant's motion, the Court "take[s] as true all the factual allegations of the [complaint] and the reasonable inferences that can be drawn from them."[6]

## III. ANALYSIS

### A. Whether SLUSA Preempts Plaintiffs' Claims

Because Defendant mainly argues that SLUSA preempts Plaintiffs' claims, the Court begins by discussing the statute's background and text.

#### 1. SLUSA's Background and Text

In 1995, Congress adopted the Private Securities Litigation Reform Act ("PSLRA") to combat "perceived abuses of the class-action vehicle in litigation involving nationally traded securities."[7] Specifically, Congress found that "nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests, and manipulation by class action lawyers of the clients whom they purportedly represent had become rampant" in class-action securities litigation.[8] The PSLRA aimed "to curb these perceived abuses" by, among other things, imposing heightened pleading requirements on certain federal securities claims.[9]

The PSLRA "had an unintended consequence: It prompted at least some members of the plaintiffs' bar to avoid the federal forum altogether. Rather than face the obstacles set in their path by the [PSLRA], plaintiffs and their representatives began bringing class actions under state law, often in state court."[10] That was not the result Congress intended, and SLUSA was enacted in 1998 to "stem this shif[t] from Federal to State courts and prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of" the

---

[6] *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010).

[7] *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006).

[8] *Id.* (quoting H.R. Conf. Rep. No. 104-369, p.31 (1995)).

[9] *Id.* at 81-82 (discussing PLSRA provisions).

[10] *Id.* at 82.

PSLRA.[11]

To that end, SLUSA preempts claims if four requirements are met: "(1) the underlying suit is a 'covered class action'; (2) the claim is based on state law; (3) the claim concerns a 'covered security'; and (4) the plaintiff alleges 'a misrepresentation or omission of material fact,' or 'a manipulative or deceptive device or contrivance, in connection with the purchase or sale of a covered security.'"[12]

Plaintiffs do not dispute that SLUSA's first three requirements are satisfied: this suit is a "covered class action," Plaintiffs' claims are based on state law, and the Nokia shares are "covered securities."[13] Instead, Plaintiffs argue that SLUSA's fourth requirement is not met because they have not alleged "a misrepresentation or omission of material fact" or a "manipulative or deceptive device or contrivance" "in connection with the purchase or sale" of covered securities. As explained below, the Court concludes that SLUSA's "in connection with" requirement is not met, and so does not reach the issue of whether Plaintiffs have alleged a "misrepresentation or omission of material fact" or a "manipulative or deceptive device or contrivance" within the meaning of the statute. For the purposes of this opinion, the Court assumes without deciding that Plaintiffs have done so.

### 2. Plaintiffs Do Not Allege Fraud or Deception "In Connection With" the Purchase or Sale of Covered Securities

The parties disagree regarding the applicable standard for determining whether SLUSA's "in connection with" requirement is met. Defendant argues that fraud or deception is "in connection with" a covered securities transaction for SLUSA purposes so long as it "coincided"

---

[11] *Id.* (citations and internal quotation marks omitted).

[12] *Rowinski v. Salomon Smith Barney, Inc.*, No. 3:02-cv-2014, 2003 WL 22740976, at *2 (M.D. Pa. Nov. 20, 2003) (quoting 15 U.S.C. § 78bb(f)(1)), *aff'd* 398 F.3d 294 (3d Cir. 2005).

[13] Doc. No. 13 at 5-6.

4

with a covered securities transaction, relying on the Supreme Court's 2006 opinion in *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*.[14] Plaintiffs respond that the "in connection with" requirement is met only where fraud or deception was "material to" a decision to engage in a covered securities transaction, an interpretation predicated on the Supreme Court's 2014 opinion in *Chadbourne & Parke LLP v. Troice*.[15] Discussion of both cases is warranted.

In *Dabit*, the plaintiff brought state-law claims on behalf of a class of brokers alleging that the investment-bank defendant had intentionally skewed market research in favor of its investment-banking clients, artificially inflating their stock prices.[16] The plaintiff represented a class of securities "holders"—individuals who alleged that the defendant's research induced them to hold overvalued securities past the point at which they otherwise would have sold them.[17] The Second Circuit held that such holder claims did not satisfy SLUSA's "in connection with" requirement because the plaintiff did not allege that he had purchased or sold securities as a result of the alleged fraud, and the Supreme Court reversed in a unanimous opinion.[18]

The Supreme Court explained that it was irrelevant that the plaintiff was a securities holder rather than a purchaser or seller; it was enough that defendant's misrepresentations "coincided" with a securities transaction "whether by the plaintiff or by someone else."[19] That is, because the complaint alleged that the defendant had intentionally manipulated stock prices to the detriment of investors, some of whom had undoubtedly purchased or sold the at-issue stocks,

---

[14] 547 U.S. 71 (2006).

[15] 134 S. Ct. 1058 (2014).

[16] 547 U.S. at 74-76.

[17] *Id.* at 77-78.

[18] *Id.*

[19] *Id.* at 85.

5

the plaintiff could not evade SLUSA simply by casting his claims as "holder" claims.[20] *Dabit* thus endorsed a broad reading of SLUSA's "in connection with" requirement in that it rejected the plaintiff's argument that only claims by purchasers or sellers of securities were preempted.[21]

In *Troice*, the Supreme Court revisited SLUSA's "in connection with" requirement in a different context. The plaintiffs in *Troice* were victims of a Ponzi scheme who alleged they were induced to purchase *uncovered* certificates of deposit (which are beyond SLUSA's reach) based on the defendant's misrepresentation that the certificates were backed by *covered* securities (to which SLUSA applies).[22] A majority of the Supreme Court held that SLUSA did not preempt the plaintiffs' state-law claims because they did not allege fraud "in connection with" the purchase or sale of covered securities.[23] In so holding, the Supreme Court stated: "A fraudulent misrepresentation or omission is not made 'in connection with' such a 'purchase or sale of a covered security' *unless it is material to a decision by one or more individuals* (other than the fraudster) *to buy or to sell a 'covered security*.'"[24] The Court further explained that "material to" means "the misrepresentation makes a significant difference to someone's decision to purchase or to sell a covered security."[25]

The majority in *Troice* cautioned that this "material to" formulation did not reflect a new approach to SLUSA's "in connection with" requirement or otherwise modify *Dabit*.[26] Rather, all of the Court's prior "in connection with" cases "involved a victim who took, tried to take, or maintained an ownership position in the statutorily relevant securities through 'purchases' or

---

[20] *Id.* at 88-89.

[21] *Id.* at 84-85 (rejecting argument that SLUSA contains a "purchaser-seller" requirement).

[22] 134 S. Ct. at 1062-63, 1065.

[23] *Id.* at 1066.

[24] *Id.* (emphasis added).

[25] *Id*.

[26] *Id.* ("We do not here modify *Dabit*.").

6

'sales' *induced by* [] *fraud*," meaning the fraud was "material to" the transactions.[27] This was true in *Dabit*, for example, because the complaint alleged that the defendant engaged in "fraudulent manipulation of stock prices" that "induc[ed] the plaintiffs 'to hold their stocks long beyond the point when, had the truth been known, they would have been sold.'"[28] Thus, while *Troice* did not modify *Dabit*, it emphasized that the "in connection with" requirement was met in *Dabit* because the defendant's misleading research induced (meaning it was "material to") the plaintiff's decision to hold overvalued securities.

Read together, *Dabit* and *Troice* make clear that fraudulent or deceptive conduct must be "material"—meaning that it makes a significant difference—to an individual's decision to purchase or sell a covered security to satisfy SLUSA's "in connection with" requirement.[29] Plaintiffs' claims do not satisfy this requirement because Plaintiffs do not allege that Defendant's misrepresentation that its brokerage commissions were $2.00, rather than $7.00, made a significant difference to their decision to purchase Nokia shares (or any other securities).[30]

Defendant appears to recognize that Plaintiffs' claims do not satisfy the standard articulated in *Troice*, and raises four arguments as to why *Troice* does not apply here. First, Defendant argues that *Troice* only addressed misrepresentations that uncovered securities were

---

[27] *Id.* at 1067 (citations omitted) (emphasis added).

[28] *Id.* (quoting *Dabit*, 547 U.S. at 75, 85, 89).

[29] *See Zweiman v. AXA Equitable Life Ins. Co.*, 146 F. Supp. 3d 536, 550 (S.D.N.Y. 2015) ("In light of *Troice* and *Dabit*, the 'in connection with' doctrine can be articulated as follows: the fraud must be of the type that is material to someone other than the fraudster to buy, sell, or hold a covered security; and, if so, any claim involving that transaction (or lack thereof)—regardless of whether the plaintiff herself was induced to take a position—is precluded.").

[30] *See Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 615 (7th Cir. 2012) (holding that SLUSA did not bar state-law claims alleging that the defendant inflated transaction fees because the inflated fees were "not objectively material to . . . any class members' investment decisions"); *see also Feinman v. Dean Witter Reynolds, Inc.*, 84 F.3d 539, 541 (2d Cir. 1996) (affirming dismissal of securities fraud claim alleging that the defendants charged hidden transaction fees because "no reasonable investor would have considered it important, in deciding whether or not to buy or sell stock, that a transaction fee of a few dollars might exceed the broker's actual handling charges"). Therefore, as discussed below, Plaintiffs cannot allege a UTPCPL claim, which requires reasonable reliance, but may maintain a claim for breach of contract.

7

backed by covered securities, an issue not present here.[31] Defendant thus reads *Troice* as a limited decision that does not apply outside of the circumstances in which it was decided—a reading unsupported by the majority opinion in *Troice*, which squarely addressed the scope of SLUSA's "in connection with" requirement and explained that it is met only where an alleged fraud or deception was "material to" a decision to purchase or sell covered securities. Accordingly, several other district courts have applied *Troice* in determining whether SLUSA preempted claims concerning covered securities.[32]

Moreover, the cases Defendant cites for the proposition that *Troice* should be narrowly construed are inapposite. In *Rabin v. NASDAQ OMX PHLX LLC*, the plaintiff brought a state-law claim for unjust enrichment as well as claims under Section 10(b) of the Securities Exchange Act and the SEC's associated Rule 10b-5 (which contains an "in connection with" requirement identical to SLUSA's), the crux of all of which was an alleged scheme to rig the options market so that plaintiff's trading strategy was less successful than it otherwise would have been.[33] The court held that the plaintiff's state-law claim was preempted because, like his federal claims, it relied on the theory he had been misled into adopting a particular trading strategy based on the false belief that the options market was free of manipulation.[34] And in *Northstar Financial Advisors Inc. v. Schwab Investments*, the Northern District of California held that SLUSA

---

[31] Doc. No. 15 at 5.

[32] *See Henderson v. Bank of N.Y. Mellon Corp.*, 146 F. Supp. 3d 438, 443-44 (D. Mass. 2015) (explaining that "[a]fter *Troice*, a mere coincidence of fraud with a transaction in covered securities will no longer suffice for SLUSA preemption" and denying motion to dismiss on SLUSA grounds); *see also Shuster v. AXA Equitable Life Ins. Co.*, Civil No. 14-8035 (RBK/JS), 2015 WL 4314378, at *5 (D.N.J. July 14 2015) (explaining that "the 'connection' prong of SLUSA preemption may only be met where the misrepresentation was 'material' to another individual's decision to 'purchase or sell' a . . . 'covered security'" and holding that SLUSA did not preempt plaintiff's claim); *In re Harbinger Capital Partners Funds Inv. Litig.*, No. 12-cv-1244 (AJN), 2015 WL 1439520, at *6 (S.D.N.Y. Mar. 30, 2015) (explaining that, after *Troice*, SLUSA's "in connection with" requirement "is narrow insofar as allegedly fraudulent statements must be of the type that would induce someone to buy or sell (or hold) a covered security").

[33] 182 F. Supp. 3d 220, 224-26 (E.D. Pa. 2016).

[34] *Id.* at 248-49.

preempted state-law claims alleging that the defendant had induced the plaintiff to invest in a fund by misrepresenting the riskiness of the assets underlying the fund.[35] Here, unlike *Rabin* and *Northstar*, Plaintiffs do not allege that they were misled into purchasing or selling any security or adopting a certain trading strategy.[36]

Second, Defendant relies on cases holding that a misrepresentation need not concern a particular security in order to satisfy SLUSA's "in connection with" requirement.[37] However, these cases largely pre-date *Troice*, which made clear that regardless of whether a misrepresentation *concerns* a particular security, it must be "material to" a plaintiff's decision to purchase or sell a covered security to trigger preemption. Because Plaintiffs do not allege that Defendant's alleged misrepresentation was material to *any* securities transaction or to Plaintiffs' trading strategy generally, that requirement is not met.

Defendant relies heavily on the Supreme Court's decision in *SEC v. Zandford* for its argument, but *Zandford* pre-dates *Troice* and arose in such a different context as to be inapposite. In *Zandford*, the defendant, a securities broker, was granted power of attorney to open and manage an investment account for an elderly client; instead, he swindled the client by selling the securities in the account and keeping the proceeds for himself.[38] The SEC brought a successful

---

[35] Case No. 08-CV-04119-LHK, 2016 WL 706018, at *13-14 (N.D. Cal. Feb. 23, 2016). Specifically, the defendant represented that the fund would invest in low-risk agency securities and similar assets, when in fact it invested in high-risk collateralized mortgage obligations. *Id.*

[36] Defendant also cites the Seventh Circuit's per curiam opinion in *Goldberg v. Bank of America*, 846 F.3d 913 (7th Cir. 2017). In *Goldberg*, the plaintiff deposited cash in a custodial account with the defendant so that it could be invested in mutual funds. *Id.* at 915. Unbeknownst to the plaintiff, the defendant steered the cash to mutual funds that paid the defendant a secret fee when cash was "swept" from the plaintiff's account into the mutual fund at the end of each day. *Id.* The Seventh Circuit affirmed the district court's dismissal of the plaintiff's state-law claims on SLUSA grounds, finding that the bank's failure to disclose the secret fees was a material omission "in connection with" covered securities transactions. *Id.* at 916. *Goldberg* is distinguishable because it concerned secret fees that resulted in near-daily losses in the plaintiff's account—an omission that a reasonable investor could well consider material. To the extent *Goldberg* holds otherwise, it is not binding on this Court.

[37] *See SEC v. Zandford*, 535 U.S. 813, 815-16 (2002); *Angelastro v. Prudential-Bache Secs., Inc.*, 764 F.2d 939 (3d Cir. 1985).

[38] 535 U.S. at 815-16.

civil suit against the defendant under Rule 10b-5.[39] On appeal, the defendant argued that Rule 10b-5's "in connection with" requirement was not satisfied because his fraud did not relate to the value of any particular security, but rather involved stealing his client's funds after engaging in otherwise-lawful securities transactions.[40] The Fourth Circuit accepted this argument, and a unanimous Supreme Court reversed. The Supreme Court found that because each securities sale "was made to further [defendant's] fraudulent scheme," the sales were "properly viewed as a 'course of business' that operated as a fraud or deceit on a stockbroker's customer," and it was therefore irrelevant that the defendant's fraud did not concern any particular security.[41]

*Zandford* is a far cry from this case because it concerned a fraud so wide-ranging that it tainted every securities transaction in the plaintiff's account. Unlike in *Zandford*, Plaintiffs were not the victims of fraud in their account from beginning to end; they merely allege that they were overcharged on certain transactions in violation of the pricing terms posted on Defendant's website. *Zandford* thus does not compel the conclusion that SLUSA preempts Plaintiffs' claims.

Defendant also cites *Angelastro v. Prudential-Bache Securities, Inc.*, a pre-SLUSA Third Circuit case in which the plaintiff alleged that a securities broker had misrepresented the terms governing her margin account.[42] The issue before the Third Circuit was whether the misrepresentations were "in connection with" the purchase or sale of securities.[43] The Third Circuit held that they were for reasons unique to margin accounts, such as that understanding their terms is necessary for customers to "evaluate the desirability of purchasing securities on margin" and to prevent investors from being forced to liquidate their securities at a loss in order

---

[39] *Id.* at 819 (quoting 17 C.F.R. § 240.10b-5).

[40] *Id.* at 816-17.

[41] *Id.* at 820-821.

[42] 764 F.2d 939 (3d Cir. 1985).

[43] *Id.* at 941-42.

to meet a margin call.[44] In contrast, Plaintiffs do not allege that Defendant's misrepresentation regarding brokerage commissions was material to Plaintiffs' course of trading securities.[45]

Third, Defendant argues that the "in connection with" requirement is met because brokerage commissions "depend on" securities transactions. Defendant's argument relies upon the Third Circuit's opinion in *Rowinski v. Salomon Smith Barney Inc.*[46] But *Rowinski* is plainly distinguishable and did not lay down such a broad rule.

Like *Dabit*, *Rowinski* concerned state-law claims alleging that the defendant distributed biased market research, and that the plaintiff, one of the defendant's brokerage customers, was duped into purchasing artificially inflated securities as a result.[47] And like *Dabit*, *Rowinski* is distinguishable because the complaint alleged that the defendant misrepresented the value of securities with the intent of inducing investors to purchase them, and that the plaintiff determined whether to sell or hold such securities in reliance upon those misrepresentations.[48] These misrepresentations were thus "material to" the *Rowinski* plaintiff's trading decisions in a way that Defendant's alleged misrepresentations concerning its brokerage commissions were not. To

---

[44] *Id.* at 944-45.

[45] Also inapposite are the post-*Troice* "best execution" cases cited by Defendant, which concern allegations that brokers failed to obtain the best execution price while engaging in securities transactions on behalf of their clients, contrary to their representations that they would do so. *See, e.g.*, *Lim v. Charles Schwab & Co.*, Case Nos. 15-cv-02074-RS; 15-cv-02945-RS, 2015 WL 7996475, at *1, 7 (N.D. Cal. Dec. 7, 2015). In *Lim*, for example, the court found that SLUSA's "in connection with" requirement was met because "the false promise of best execution" induced plaintiffs to execute trades with the defendant. *Id.* at *7. That is not the case here, as Plaintiffs do not allege that the terms of the Voyager Select program induced them to execute trades.

[46] 398 F.3d 294 (3d Cir. 2005).

[47] *Id.* at 296-97. *Rowinski* also identified other non-exclusive factors relevant to determining whether the "in connection with" requirement is met, including "whether the complaint alleges a material misrepresentation or omission disseminated to the public in a medium upon which a reasonable investor would rely"; "whether the nature of the parties' relationship is such that it necessarily involves the purchase or sale of securities," and "whether the prayer for relief 'connects' the state law claims to the purchase or sale of securities." *Id.* at 302 (internal quotation marks omitted). The Third Circuit emphasized that these were "not requirements, but rather guideposts in a flexible preemption inquiry," and that "[i]n a SLUSA case involving different facts or allegations, other considerations also may be relevant." *Id.* at 302 n.7. Because this case concerns markedly different allegations than *Rowinski*, the Court focuses on the fact that Plaintiffs have not alleged Defendant's misrepresentations or omissions were material to their decision to purchase the at-issue Nokia shares, and does not find the other *Rowinski* factors dispositive.

[48] *Id.* at 302-03.

the extent Defendant reads *Rowinski* more expansively to foreclose state-law claims—even those that are immaterial to a decision to purchase or sell securities—merely because they involve brokerage commissions and in that sense "depend on" the purchase or sale of securities, that interpretation is overbroad and foreclosed by *Troice*.[49]

Finally, Defendant falls back on the general argument that SLUSA should be interpreted broadly. But interpreting SLUSA broadly does not mean giving the statute an unlimited reach as far as state-law contract claims go.[50] Here, because the "in connection with" requirement is not met, Plaintiffs' claims avoid SLUSA's bar. Defendant's motion to dismiss will be denied to the extent it is based on SLUSA.

### B. Whether Plaintiffs Have Pleaded the Elements of a UTPCPL Claim

Defendant also moves to dismiss Plaintiffs' UTPCPL claim on the ground that Plaintiffs have failed to allege justifiable reliance. "[T]he Supreme Court of Pennsylvania has announced and applied a broad rule that private plaintiffs must allege justifiable reliance" to state a claim under the UTPCPL.[51] Here, Plaintiffs do not allege justifiable reliance, and more or less disclaim it, as they argue that Defendant's alleged misrepresentations concerning its brokerage

---

[49] Defendant also cites *Shaw v. Charles Schwab & Co.*, in which the plaintiff alleged that the defendant engaged in numerous misrepresentations regarding its investment services, including misrepresenting its commission structure and fees, charging customers twice for a single transaction, and misrepresenting the reserve requirements imposed on clients. No. BC238732, 2003 WL 1463842, at *1 (Cal. Super. Ct. Mar. 7, 2003). Because the court applied a pre-*Dabit* version of the "coincides with" standard in determining that the defendant's misrepresentations were "in connection with" the purchase or sale of securities, *Shaw*'s reasoning is not particularly illuminating. *Shaw* is also distinguishable because the misrepresentations at issue went far beyond the size of the defendant's brokerage commission, and extended to reserve requirements and other features of the plaintiff's account not at issue here.

[50] *See Troice*, 134 S. Ct. at 1068-69 (explaining that although SLUSA preempts many state-law claims, it expressly "maintains state legal authority, especially over matters that are primarily of state concern" and that "[a] broad interpretation of the Litigation Act works at cross-purposes with this state-oriented concern"); *see also Rowinski*, 398 F.3d at 301("Federal securities law is circumscribed, and strikes a balance between uniform regulation of a national market and preservation of those areas 'traditionally left to state regulation,' such as corporate, contract and fiduciary law.") (quoting *Santa Fe Indus. Inc. v. Green*, 430 U.S. 462, 478-80 (1977)).

[51] *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 226 (3d Cir. 2008); *see also Am. Fed'n of State Cty. & Mun. Emps. Dist. Council 47 Health & Welfare Fund v. Ortho-McNeil-Janssen Pharm., Inc.*, 857 F. Supp. 2d 510, 514 (E.D. Pa. 2012) ("To prevail on a claim under the UTPCPL . . . Plaintiffs must be able to establish justifiable reliance, causation, and injury.") (citations omitted).

commissions did *not* induce them to maintain an account with Defendant or to engage in any securities transactions, as explained above.[52] Plaintiffs' UTPCPL claim will thus be dismissed with prejudice, as Plaintiffs have not requested leave to amend and amendment would be futile.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion will be granted in part and denied in part. Plaintiffs' UTPCPL claim will be dismissed with prejudice for failure to plead justifiable reliance, and Plaintiffs' claim for breach of contract may proceed.

---

[52] Plaintiffs' responses are beside the point. Plaintiffs mostly argue that the UTPCPL allows claims in "post-contract deception cases," Doc. No. 13 at 15, but that does not change the fact that justifiable reliance is an element of such claims, and that Plaintiffs have failed to allege it.