# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEX TAKSIR and ORIT TAKSIR, : <br> on behalf of themselves and all others : <br> similarly situated, : <br>         Plaintiffs, : <br> : <br> v. : <br> : <br> THE VANGUARD GROUP, INC., : <br>         Defendant. : | CIVIL ACTION NO. 16-5713 |

## MEMORANDUM OPINION

Rufe, J.                                                                                                                       August 8, 2017

Defendant The Vanguard Group, Inc. has moved for reconsideration of the Court's May 26, 2017 Opinion denying Vanguard's motion to dismiss the complaint. In the alternative, Vanguard seeks leave to file an interlocutory appeal. Finding no error in its earlier decision, the Court will deny Vanguard's motion for reconsideration, but because this case raises important and unsettled issues of preclusion under the federal securities laws, the Court will certify its decision for immediate appeal under 28 U.S.C. § 1292(b).

## I. INTRODUCTION

Plaintiffs, on behalf of a proposed class of investors, assert a breach-of-contract claim against Vanguard, their securities broker. Plaintiffs allege that by investing more than $500,000 with Vanguard, they qualify for its "Voyager Select Program," under which they should be charged a $2.00 commission on securities trades. On two occasions, however, Plaintiffs were charged a $7.00 commission instead. When pressed for details about the overcharge, Vanguard informed Plaintiffs that it resulted from "IRS nondiscrimination rules," which Plaintiffs dispute apply to the trades at issue.

Plaintiffs initially alleged a claim for breach of contract and a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Vanguard moved to dismiss, arguing that Plaintiffs failed to state a claim under the UTPCPL and that both claims were barred by the Securities Litigation Uniform Standards Act ("SLUSA"). The Court held that Plaintiffs failed to state a claim under the UTPCPL, but that SLUSA did not preclude Plaintiffs' breach-of-contract claim.

The primary issue in determining SLUSA's applicability was whether Plaintiffs alleged that Vanguard made a misrepresentation or omission of material fact, or employed any manipulative or deceptive device or contrivance, "in connection with" the purchase or sale of securities. The Court held that they did not, because under the Supreme Court's 2014 opinion in *Chadbourne & Park LLP v. Troice*, fraudulent or deceptive conduct is only "in connection with" a purchase or sale of securities if it is "material to" a purchase or sale of securities.[1] Under this standard, the Court concluded that the two alleged $5.00 overcharges were not material to any securities transactions, and so SLUSA did not preclude Plaintiffs' claim.

In its motion to dismiss briefing, Vanguard did not argue that the alleged overcharges were "material to" any decision to purchase or sell securities. Instead, Vanguard argued that the "material to" standard was inapplicable, and that SLUSA precluded Plaintiffs' claim so long as the alleged fraud or deception "coincided with" a purchase or sale of securities. Vanguard's argument was based primarily on two pre-*Troice* cases: the Supreme Court's 2006 decision in *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,[2] and the Third Circuit's 2005 decision in *Rowinski v. Salomon Smith Barney Inc*.[3] The Court's opinion explained that while *Dabit* and

---

[1] 134 S. Ct. 1058, 1066 (2014).

[2] 547 U.S. 71 (2006).

[3] 398 F.3d 294 (3d Cir. 2005).

*Rowinski* remain good law, they do not compel the conclusion that SLUSA precludes Plaintiffs' claims because in both *Dabit* and *Rowinski*, the alleged misrepresentations were "material to" investment decisions, which is not true of the two $5.00 overcharges alleged here.

Vanguard now moves for reconsideration. Vanguard's primary argument, as before, is that *Troice* does not apply, and that fraud or deception is "in connection with" a purchase or sale of securities so long as it "coincides with" that transaction. Vanguard also argues, for the first time, that the two $5.00 overcharges were "material to" the purchase or sale of securities, meaning SLUSA applies even if *Troice* supplies the governing standard. The Court's opinion considered and rejected Vanguard's argument that *Troice* is inapplicable, and Vanguard's new argument that the overcharges were material to securities transactions is not compelling. Reconsideration is not warranted.

However, Vanguard's motion will be granted to the extent it seeks certification of the Court's opinion for interlocutory appeal. There is little post-*Troice* authority regarding whether SLUSA applies to the sort of breach-of-contract claim alleged here. Because this issue is likely dispositive, the Court will certify its opinion for interlocutory appeal.

## II. LEGAL STANDARD

### A. Reconsideration

A party seeking reconsideration must show: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."[4] "[M]otions for . . . reconsideration should be granted sparingly and may not be used to rehash arguments which have already been briefed by the parties and considered and decided by the

---

[4] *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

Court."[5] "Reconsideration is not permitted simply to allow a 'second bite at the apple.'"[6]

### B. SLUSA

SLUSA precludes claims if four requirements are met: "(1) the underlying suit is a 'covered class action'; (2) the claim is based on state law; (3) the claim concerns a 'covered security'; and (4) the plaintiff alleges 'a misrepresentation or omission of material fact,' or 'a manipulative or deceptive device or contrivance, in connection with the purchase or sale of a covered security.'"[7] It is undisputed that the first three elements are met, and only the fourth element is at issue.

### C. Certification for Interlocutory Appeal

A district court may certify an order for interlocutory review if (1) the order involves a "controlling question of law"; (2) there is a "substantial ground for difference of opinion" as to its correctness; and (3) interlocutory appeal may "materially advance the ultimate termination of the litigation."[8] "Certification is not to be granted routinely, but is to be used in the rare cases where an immediate appeal will avoid costly and protracted litigation."[9]

## III. ANALYSIS

### A. The Arguments Previously Raised in Vanguard's Motion to Dismiss Do Not Provide a Basis for Reconsideration

Vanguard renews its argument that the Supreme Court's decision in *Troice* is inapplicable, and that immaterial fraud or deception that merely "coincides with" the purchase or

---

[5] *Calhoun v. Mann*, Civil Action No. 08-458, 2009 WL 1321500, at *1 (E.D. Pa. May 12, 2009) (citation and internal quotation marks omitted; alteration in original).

[6] *Id.* (citing *Bhatnagar v. Surrendra Overseas Ltd.,* 52 F.3d 1220, 1231 (3d Cir. 1995)).

[7] *Rowinski v. Salomon Smith Barney, Inc.*, No. 3:02-cv-2014, 2003 WL 22740976, at *2 (M.D. Pa. Nov. 20, 2003) (quoting 15 U.S.C. § 78bb(f)(1)), *aff'd* 398 F.3d 294 (3d Cir. 2005).

[8] *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (citing 28 U.S.C. § 1292(b)).

[9] *Bush v. Adams*, 629 F. Supp. 2d 468, 474 (E.D. Pa. 2009) (citing *Sporck v. Peil*, 759 F.2d 312, 315 n.4 (3d Cir. 1985)).

sale of securities in enough to trigger SLUSA preclusion.[10] This argument remains unconvincing.[11]

### 1. *Troice* Supplies the Governing Standard

#### a. *Troice* Was Neither Expressly nor Impliedly Limited to Cases Involving Uncovered Securities

Vanguard rehashes its argument that *Troice* does not apply because this case involves covered securities, rather than uncovered securities.[12] To be sure, *Troice* involved uncovered securities, but the Supreme Court's articulation of SLUSA's "in connection with" requirement was neither expressly nor impliedly limited to such cases.

In *Troice*, the Supreme Court stated: "A fraudulent misrepresentation or omission is not made in connection with [] a purchase or sale of a covered security unless it is material to a decision by one or more individuals (other than the fraudster) to buy or to sell a covered security."[13] The Supreme Court further explained that "[a]n interpretation that insists upon a material connection with a transaction in a covered security is consistent with the Act's basic focus" and supported by "a natural reading of [SLUSA]'s language."[14] Because SLUSA refers to a "misrepresentation or omission of a material fact," the Supreme Court explained, it requires "a connection that matters," meaning one which "makes a significant difference to someone's decision to purchase or to sell a covered security."[15] That reasoning does not cease to apply

---

[10] Doc. No. 18 (Vanguard's Motion for Reconsideration) at 3-4.

[11] The Court's prior opinion did not reach the issue of whether Plaintiffs alleged a material "misrepresentation or omission," or a "manipulative or deceptive device or contrivance," within the meaning of SLUSA.

[12] Under SLUSA, "covered securities" include securities traded on a national exchange, such as the stocks at issue here. *See* 15 U.S.C. § 78bb(f)(5)(E).

[13] *Troice*, 134 S. Ct. at 1066 (internal quotation marks omitted).

[14] *Id.*

[15] *Id.*

5

when the securities at issue are covered securities. Thus, after *Troice*, fraud or deception is not "in connection with" a covered securities transaction unless it is "material to" that transaction.

It bears emphasis that the "material to" formulation espoused in *Troice* was not new. The Supreme Court was careful to note that prior "in connection with" cases all "concerned a false statement (or the like) that was material to another individual's decision to purchase or s[ell] . . . a covered security."[16] Vanguard is thus wrong to suggest that applying a "material to" standard to cases involving covered securities would precipitate a drastic change in securities law.

This Court is not alone in reaching the conclusion that, after *Troice*, fraud or deception must be "material to" a securities transaction to satisfy SLUSA's "in connection with" requirement.[17] Indeed, courts in two of the cases cited by Vanguard have applied the "material to" standard from *Troice* in determining whether SLUSA precluded the claims at issue.[18] The Court's decision is therefore hardly the outlier Vanguard makes it out to be.

---

[16] *Id.* at 1069 (emphasis added) (citations and internal quotation marks omitted).

[17] *See Zweiman v. AXA Equitable Life Ins. Co.*, 146 F. Supp. 3d 536, 550 (S.D.N.Y. 2015) ("In light of *Troice* and *Dabit*, the 'in connection with' doctrine can be articulated as follows: the fraud must be of the type that is material to someone other than the fraudster to buy, sell, or hold a covered security; and, if so, any claim involving that transaction (or lack thereof)—regardless of whether the plaintiff herself was induced to take a position—is precluded."); *Henderson v. Bank of N.Y. Mellon Corp.*, 146 F. Supp. 3d 438, 443-44 (D. Mass. 2015) ("After *Troice*, a mere coincidence of fraud with a transaction in covered securities will no longer suffice for SLUSA preemption."); *see also Shuster v. AXA Equitable Life Ins. Co.*, No. 14-8035, 2015 WL 4314378, at *5 (D.N.J. July 14 2015) (explaining that "the 'connection' prong of SLUSA preemption may only be met where the misrepresentation was 'material' to another individual's decision to 'purchase or sell' a . . . 'covered security'"); *In re Harbinger Capital Partners Funds Inv. Litig.*, 12-1244, 2015 WL 1439520, at *6 (S.D.N.Y. Mar. 30, 2015) (similar). Vanguard protests that all of these cases were decided in different factual contexts, but the point is that in each one, the court recognized that the "material to" formulation from *Troice* was controlling.

[18] *Zola v. TD Ameritrade, Inc.*, 172 F. Supp. 3d 1055, 1070 (D. Neb. 2016) (citing *Troice* for the applicable standard and concluding that SLUSA precluded Plaintiffs' claims because the alleged misrepresentations were "material to" purchases or sales of securities); *Lim v. Charles Schwab & Co.*, Case Nos. 15- 02074; 15-02945, 2015 WL 7996475, at *6 (N.D. Cal. Dec. 7, 2015) (noting that the Court in *Troice* emphasized that its opinion was consistent with *Dabit*, and stating: "[I]n *Dabit*, the misrepresentation was material to an individual's decision to buy, sell, or hold a covered security. Mindful of SLUSA's correspondence with Section 10(b), that is the standard appropriate here.") (citations and footnotes omitted).

### b. The Cases Cited by Vanguard Do Not Hold that SLUSA Precludes Claims Even Where the Alleged Fraud or Deception Is *Immaterial* to the Purchase or Sale of Securities

As in its motion to dismiss, Vanguard marshals non-binding case law in support of its position that *Troice* is inapplicable. These cases were for the most part considered and distinguished in the Court's prior opinion, and provide no basis for reconsideration.[19] Moreover, in each case, the plaintiff alleged fraud or deception that was "material to" a purchase or sale of securities, meaning these cases do not stand for the proposition apparently advanced by Vanguard—that fraud or deception *immaterial* to the purchase or sale of securities is enough to trigger SLUSA preclusion.

For example, the Seventh Circuit's *per curiam* decision in *Goldberg v. Bank of America, N.A.*, concerned allegations that the defendant invested the plaintiff's money in mutual funds that paid the defendant a fee, which the bank kept for itself without disclosing to its customers—essentially a "secret fee collected from the accounts."[20] This omission was "material to" securities transactions because it amounted to a "secret side payment" deducted from the plaintiff's account on a near-daily basis.[21] The majority in *Goldberg* thus concluded that the "complaint alleged a material omission in connection with sweeps to mutual funds that are covered securities," warranting SLUSA preclusion.[22] Here, in contrast, Plaintiffs allege only that Vanguard charged them a higher amount than what was represented on the applicable fee

---

[19] The sole exception is a single out-of-circuit case decided after the motion-to-dismiss briefing concluded. *See Rayner v. E*Trade Financial Corp*. No. 16-7129, 2017 WL 1232730, at *6 (S.D.N.Y. April 3, 2017). As discussed below, nothing in *Rayner* alters the Court's conclusion.

[20] 846 F.3d 913 (7th Cir. 2017), *petition for cert. filed*, No. 16-1841 (June 21, 2017).

[21] *Id.* at 916 ("A claim that a fiduciary that trades in securities for a customer's account has taken secret side payments is well inside the bounds of securities law.").

[22] *Id.*

schedule; they do not attempt to hold Vanguard liable for secretly engaging in self-interested transactions with their funds.[23]

Vanguard also relies on *Rabin v. NASDAQ*, decided by another court in this District.[24] In *Rabin*, the plaintiff brought a state-law unjust enrichment claim as well as federal securities claims, premising each claim on his pursuit of a failed trading strategy—"skating"— based on the false impression that the options market was free from manipulation. There was little doubt that the plaintiff alleged fraud that was "material to" his trading strategy—the crux of his claims was that he would not have attempted to "skate" had he realized that the defendants were rigging the options market. As such, the issue of whether SLUSA precluded the plaintiff's unjust enrichment claim did not hinge on whether *Troice* supplied the governing standard.[25] The court did state that the plaintiff's reliance on *Troice* was "misplaced" because the "securities at issue there were not governed by SLUSA."[26] But this hardly amounts to an endorsement of the broad rule Vanguard proposes—that *Troice* is wholly inapplicable to cases involving covered securities, and that in such cases, fraud or deception that is immaterial to securities transactions is enough to warrant preclusion.

---

[23] To the extent *Goldberg* holds that *Troice* is inapplicable to all claims involving covered securities, this Court disagrees. It bears noting that *Goldberg* was decided by a fractured panel of the Seventh Circuit, and confined its discussion of *Troice* to two sentences. Judge Flaum's concurrence in *Goldberg* was also clear that "SLUSA does not preempt all contract claims," and suggested that "post-agreement decisions to breach," similar to what is alleged here, "may avoid SLUSA's scope." *Id.* at 920 (Flaum, J., concurring).

[24] *Rabin v. NASDAQ OMX PHLX LLC*, 182 F. Supp. 3d 220 (E.D. Pa. 2016).

[25] The court in *Rabin* found multiple elements of the plaintiff's federal claims lacking, and then turned to the plaintiff's state-law unjust enrichment claim, which was based on the same allegations. In attempting to avoid dismissal of the unjust enrichment claim, the plaintiff primarily argued that if his federal claims were found deficient, SLUSA could not apply, essentially reasoning that SLUSA only applied to state-law claims that doubled as meritorious federal securities claims. *Id.* at 248. The court rejected this argument as foreclosed by the Supreme Court's decision in *Dabit*, which established that a plaintiff cannot avoid SLUSA preclusion merely by pointing out that he lacks a winning federal securities claim. *Id.* at 248-49 (citing *Dabit*, 547 U.S. at 84-85).

[26] *Rabin*, 182 F. Supp. 3d at 249.

Finally, Vanguard again cites the post-*Troice* "best execution" cases. These cases involve allegations that brokers misrepresented that they would deliver "best execution" (meaning the best possible price) for securities transactions, and instead routed their customers' orders to venues that paid the brokers rebates regardless of whether this resulted in the best possible price.[27] Faced with such allegations, courts have had little difficulty concluding that SLUSA's "in connection with" requirement was met, because the brokers' false promise to obtain the best available price was "material to" the plaintiffs' trading decisions.[28] That is not the case here.

At bottom, this case concerns a scenario not present in *Goldberg*, *Rabin*, or the best execution cases—alleged fraud or deception that was immaterial to any securities trades. Vanguard identifies no post-*Troice* case law holding that SLUSA preclusion is warranted under these circumstances.

### 2. The Pre-*Troice* Cases Cited by Vanguard Also Do Not Warrant Reconsideration

Vanguard also argues that the Court ignored or misapplied two pre-*Troice* cases: the Supreme Court's decision in *Dabit* and the Third Circuit's decision in *Rowinski*. Both cases were raised in Vanguard's motion to dismiss, and do not provide a basis for reconsideration. And while Vanguard strives to paint the Court's opinion as inconsistent with *Dabit* and *Rowinski*, a review of both cases demonstrates that this is not so.

#### a. The Court's Ruling Is Consistent with *Dabit*

Unlike the present case, *Dabit* involved misrepresentations that were "material to" the

---

[27] *See Zola*, 172 F. Supp. 3d at 1073; *see also Rayner*, 2017 WL 1232730, at *1; *Lim*, 2015 WL 7996475, at *7.

[28] *E.g., Zola*, 172 F. Supp. 3d at 1073 (explaining that because the defendant's conduct caused plaintiffs "to obtain less than the best possible price for their securities," it was "material to every purchase or sale of a security through" defendant); *Lim*, 2015 WL 7996475, at *7 ("the false promise that customers will receive the best price for their trades is material to every decision to purchase or sell a security").

purchase or sale of securities. The complaint in *Dabit* alleged that the defendant disseminated misleading market research in furtherance of a scheme "to enhance the prices of its investment banking clients' stocks."[29] The issue in *Dabit* was whether the plaintiffs, who had held the overvalued securities as a result of defendant's misrepresentations—but had not, strictly speaking, engaged in a "purchase or sale" of securities—alleged fraud "in connection with" the "purchase or sale" of securities within the meaning of SLUSA. The Supreme Court held that they had, reasoning that "the identity of the plaintiffs does not determine whether the complaint alleges fraud 'in connection with the purchase or sale' of securities."[30]

In concluding that the claims were barred by SLUSA, the Supreme Court noted that prior cases had found the "in connection with" requirement satisfied where 'the fraud alleged "coincide[d]' with a securities transaction—whether by the plaintiff or by someone else."[31] This "coincides with" standard was easily met in *Dabit*, as the misconduct alleged—"fraudulent manipulation of stock prices—unquestionably qualifie[d] as fraud 'in connection with the purchase or sale' of securities."[32] Indeed, the complaint in *Dabit* was "distinguishable from a typical Rule 10b–5 class action" only in that it was "brought by holders instead of purchasers or sellers."[33] That is, the claims in *Dabit* were precisely the sort that SLUSA was meant to preclude—failed federal securities claims disguised as state-law claims—and the plaintiffs could not avoid this result merely because of their status as securities holders.

In *Troice*, the Supreme Court explicitly stated that it was not modifying *Dabit*. The Court in *Troice* also explained that the alleged misrepresentations in *Dabit* were "material to"

---

[29] 547 U.S. at 75.

[30] *Id.* at 89.

[31] *Id.* at 85.

[32] *Id.* at 89.

[33] *Id.* at 88-89.

10

securities transactions, meaning they satisfied the "in connection with" standard as articulated in *Troice*.[34] Accordingly, applying *Troice* in the present case does not require "implicitly" overruling *Dabit*, as Vanguard argues.[35] It just means *Dabit* does not hold that fraud or deception immaterial to securities transactions falls within SLUSA's purview.[36]

### b. The Court's Ruling Is Consistent with *Rowinski*

Vanguard also argues that the Court ignored the Third Circuit's decision in *Rowinksi*. As explained in the Court's opinion, *Rowinski*, like *Dabit*, involved allegations that the defendant fraudulently manipulated stock prices, and like *Dabit*, there was little dispute that the alleged misrepresentations were "material to" securities transactions.[37] Because that is not the case here, *Rowinski* does not warrant reconsideration.

Vanguard claims that the Court erred by failing to apply mechanically the four factors mentioned by the Third Circuit in *Rowinski*—factors the Third Circuit described as "flexible," "non-inclusive," and "not requirements."[38] But as this Court previously explained, rote

---

[34] *Troice*, 134 S. Ct. at 1066 ("[In *Dabit*] we held that the Litigation Act precluded a suit where the plaintiffs alleged a 'fraudulent manipulation of stock prices' that was material to and 'coincide[d] with' third-party securities transactions, while also inducing the plaintiffs to 'hold their stocks long beyond the point when, had the truth been known, they would have sold.'") (quoting *Dabit*, 547 U.S. at 75, 85, 89) (alteration in original). This comports with the Court's earlier opinion. *See Taksir v. Vanguard*, No. 16-5713, 2017 WL 231147, at *3 (E.D. Pa. May 26, 2017). *see also* Doc. No. 16 (May 26, 2017 Opinion) at 6-7 (noting that *Troice* did not modify *Dabit*).

[35] Doc. No. 18 at 4.

[36] Vanguard points to the Supreme Court's instruction in *Dabit* that SLUSA's "in connection with" requirement should be given a "broad construction." Doc. No. 18 at 8 (quoting *Dabit*, 547 U.S. at 86). But as another court has explained, "[b]etween *Troice and Dabit* . . . the 'in connection with' requirement can fairly be said to have both a narrow and a broad dimension. It is narrow insofar as allegedly fraudulent statements must be of the type that would induce someone to buy or sell (or hold) a covered security . . . . But once it is shown that the alleged fraud is comprised of statements or omissions that would lead an investor to make a decision about whether to buy or purchase covered securities, the scope of what is precluded is broad . . . ." *In re Harbinger Capital Partners Funds Inv. Litig.*, 2015 WL 1439520, at *6.

[37] *Rowinski*, 398 F.3d at 305.

[38] *Id.* at 302 n.7. The factors are: "whether the covered class action alleges a fraudulent scheme that coincides with the purchase or sale of securities"; "whether the complaint alleges a material misrepresentation or omission 'disseminated to the public in a medium upon which a reasonable investor would rely'"; "whether the nature of the parties' relationship is such that it necessarily involves the purchase or sale of securities"; and "whether the prayer

application of the *Rowinski* factors would be unhelpful in a case like this, where the alleged fraud or deception was not "material to" any securities transaction. Indeed, Vanguard's insistence upon a rigid adherence to the four *Rowinski* factors runs contrary to *Rowinksi* itself, which explained that SLUSA's application is "flexible" and that in cases "involving different factors or allegations, other considerations also may be relevant."[39] Here, the primary consideration is that the allegedly inaccurate fee schedule was immaterial to any securities transaction. Nothing in *Rowinski* suggests that SLUSA applies under these circumstances.[40]

### B. Vanguard's New Argument That $5.00 Overcharges Are Objectively "Material to" the Purchase or Sale of Securities is Not Compelling

#### 1. No Reasonable Investor Would Consider the Alleged $5.00 Overcharges Material

Vanguard argues for the first time that the alleged $5.00 overcharges were "material to" the purchase or sale of securities. Because this argument could have been raised in Vanguard's motion to dismiss, it does not provide a basis for reconsideration. It is also without merit.

Vanguard argues that the Court incorrectly applied a subjective standard of materiality, rather than an objective, "reasonable investor" standard. Although the Court's opinion did not use the word "objective," its import should have been clear—no reasonable investor would make different decisions in purchasing or selling securities based on a fee of $7.00 per transaction instead of $2.00.[41] The alleged overcharge is unrelated to any particular security or trading

---

for relief connects the state law claims to the purchase or sale of securities." *Id.* at 302 (citations and internal quotation marks omitted).

[39] *Id.*

[40] The Court notes that the first *Rowinski* factor is based on a "coincides with" standard similar to the one later mentioned in *Dabit*, and that the Third Circuit has yet to revisit *Rowinski* in light of both *Dabit* and *Troice*.

[41] *See Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 615 (7th Cir. 2012) (holding that SLUSA did not bar state-law claims alleging that the defendant inflated transaction fees because the inflated fees were "not objectively material to . . . any class members' investment decisions"); *see also Feinman v. Dean Witter Reynolds, Inc.*, 84 F.3d 539, 541 (2d Cir. 1996) ("no reasonable investor would have considered it important, in deciding whether or not to buy or sell stock, that a transaction fee of a few dollars might exceed the broker's actual handling charges"). Defendant attempts to distinguish *Appert* and *Feinman* on the ground that the fees in those cases were

12

strategy—it is essentially a transaction fee that varies based on the value of a customer's account with Vanguard. A trivial fee so far removed from actual investment decisions is not objectively material to the purchase or sale of securities.[42]

Vanguard identifies no case law supporting its position that a $5.00 difference in brokerage commissions is objectively material. Instead, Vanguard's leading authority is a platitudinous statement from a "Stockbrokers.com" article that "[t]rade costs are no doubt on many investors' minds."[43] No doubt they are, but it does not follow that the costs at issue here would make a significant difference to a reasonable investor's decision to purchase or sell securities.[44]

Vanguard also cites a twelve-year old SEC amicus brief filed in *Dabit* while the case was on appeal in the Second Circuit. In that brief, the SEC advocated a bright-line rule that "any misrepresentation or omission relating to [a brokerage] account should ordinarily be regarded as inherently 'in connection with the purchase or sale of any security.'"[45] But Vanguard points to no case in which the SEC's proposed rule has been adopted, and the Supreme Court's ruling in

---

disclosed, but this is a distinction without a difference, as in both *Appert* and *Feinman* the courts focused on the trivial amounts at issue, not the fact that the fees had been disclosed. *See Feinman*, 84 F.3d 539 at 541 ("Simply stated, reasonable minds could not find that an individual investing in the stock market would be affected in a decision to purchase or sell a security by knowledge that the broker was pocketing a dollar or two of the fee charged for the transaction."); *see also Appert*, 673 F.3d at 616 (relying on *Feinman* and reaching the same conclusion).

[42] Vanguard devotes much of its reply brief to pointing out that SLUSA, unlike certain other federal securities statutes, has no "reliance" requirement, a point that is not in dispute. Vanguard claims that the Court erred by analyzing reliance, rather than materiality, but as the Court has explained repeatedly, the Court's decision rests on the fact that the fraud alleged here is not material to any securities transactions, not on Plaintiffs' failure to allege reliance.

[43] Doc. No. 18 at 11-12.

[44] *See Troice*, 134 S. Ct. at 1066 (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38-39 (2011)).

[45] Doc. No. 21 (Vanguard's Reply) at 4 (citing Brief of the SEC as *Amicus Curiae* on Issues Addressed, 2004 WL 3335313, at *11, *submitted in connection with Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 395 F.3d 25 (2d Cir. 2005), *vacated*, 547 U.S. 71 (2006)).

*Dabit* was narrower than the result urged by the SEC.[46]

Finally, Vanguard argues that Plaintiffs' complaints about the alleged overcharge show that the overcharge was material. However, a customer does not necessarily concede that a contractual term is "material to" their securities transactions simply because they attempt to enforce it. Vanguard also overlooks a more telling allegation in Plaintiffs' complaint—that after being informed of the alleged overcharge, Plaintiffs continued trading the at-issue securities in the same account.[47] The alleged overcharge was thus not material to Plaintiffs' trades, or to those of any reasonable investor.

### 2. Vanguard's Reliance on *SEC v. Zandford* Is Misplaced

Vanguard also advances two arguments based upon the Supreme Court's decision in *SEC v. Zandford*.[48] First, Vanguard repeats its argument that fraud or deception need not concern a particular security to qualify for SLUSA preclusion. This principle is not in dispute, but it has little relevance here. As the Court previously explained, *whether or not* a misrepresentation concerns the value of a particular security, it must still be "material to" a securities transaction to trigger SLUSA preclusion, a standard not met here.[49]

Second, Vanguard argues that the Court's decision "could have potentially wide-ranging and unintended consequences for the federal securities laws."[50] Vanguard argues that because SLUSA contains an "in connection with" requirement identical to the one in Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5, this Court's interpretation of SLUSA's "in

---

[46] The Supreme Court in *Troice* also declined to adopt the SEC's interpretation of SLUSA's "in connection with" requirement. *Troice*, 134 S. Ct. at 1069-70.

[47] Plaintiffs allege that after the first two trades, Vanguard stopped charging them the inflated transaction fee, despite the fact that Plaintiffs continued trading the same shares in the same accounts. Doc. No. 1 (Complaint) ¶ 35.

[48] 535 U.S. 813 (2002).

[49] *Taksir*, 2017 WL 2311247, at *5.

[50] Doc. No. 18 at 7.

connection with" requirement (which, again, is the same one espoused by the Supreme Court in

*Troice*), "will constrain the ability of plaintiffs to bring federal securities fraud claims."[51] But as

noted, *Troice* was consistent with the Supreme Court's prior "in connection with" cases—

including cases like *Zandford* that were decided under Section 10(b) and Rule 10b-5—so there is

little risk that applying the "material to" formulation from *Troice* will hinder the prosecution of

such cases, and the court in *Troice* rejected the SEC's argument that the standard would curtail

its enforcement power.[52] This is particularly true given the stark difference between this case

and the fraudulent scheme in *Zandford*.[53] Like the other cases relied upon by Vanguard,

*Zandford* does not warrant reconsideration of the Court's decision.

### C. SLUSA Does Not Preclude All Breach-of-Contract Class Actions Against Securities Brokers

Vanguard's interpretation of SLUSA is not merely at odds with *Troice*. It is also

sweeping and unprecedented, and, if adopted, would effectively immunize securities brokers

from breach-of-contract class actions brought by their customers.

According to Vanguard, if a broker fails to abide by the terms of a brokerage agreement,

it has not only breached a contract, but necessarily engaged in fraudulent or deceptive conduct.

Under Vanguard's view of *Dabit* and *Rowinski*, any such fraud or deception is "in connection

with" the purchase or sale of a security because the brokerage relationship necessarily involves

---

[51] *Id.* at 8.

[52] 134 S. Ct. at 1069-70.

[53] Vanguard accuses the Court of reading *Zandford* to mean that a "broker could steal *some* of the proceeds from the sale of an investor's securities without running afoul of the securities laws." *Id.* at 13. This is a straw man. The Court's opinion explained that *Zandford* is inapposite because it concerned a broker who pilfered all of his clients' money. The defendant's fraud or deception—essentially, the false promise that he would not steal his clients' funds—was undoubtedly "material to" securities transactions, as no reasonable investor would authorize a thief to trade on his behalf. *Zandford*, 535 U.S. at 820-21. In so describing the facts in *Zandford*, the Court did not state or imply that "SLUSA's 'in connection with' standard turns upon the amount of the stolen proceeds." Doc. No. 18 at 14. The point is simply that *Zandford* involved a misrepresentation that was "material to" securities transactions, unlike the one alleged here.

15

securities transactions. Even if *Troice* supplies the governing standard, Vanguard argues, any such fraud is "material to" the purchase or sale of a security because any resulting overcharge, "no matter how small" is objectively material.[54] In other words, all breaches of a brokerage agreement amount to fraud "in connection with" the purchase or sale of securities, and plaintiffs seeking damages for such harms must either shoehorn their grievances into federal securities claims or virtually abandon the class action mechanism.[55]

This proposed standard lacks any basis in SLUSA's text or controlling case law. SLUSA was enacted to curb abusive securities lawsuits, not to provide securities brokers with blanket immunity from run-of-the-mill contract claims.[56] As both the Supreme Court and Third Circuit have recognized, SLUSA preserves certain traditional areas of state law, including breach-of-contract actions.[57] Vanguard's reading of SLUSA would upset the federalism balance struck by the statute. It would also require reading SLUSA's "in connection with" language so broadly as to deprive it of any meaning.[58] Nothing in SLUSA or the case law cited by Vanguard compels the Court to endorse such a reading. Vanguard's motion for reconsideration is denied.

---

[54] Doc. No. 18 at 11.

[55] For many plaintiffs, this would mean no remedy at all. Not every breach-of-contract claim against a broker can be transformed into a winning federal securities claim. And it would be cost prohibitive for plaintiffs to pursue claims such as the one here, which seeks a few dollars in damages, individually or in the small groups permitted by SLUSA. *E.g.*, *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions [] permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . . [M]ost [such] plaintiffs would have no realistic day in court if a class action were not available.").

[56] *Goldberg*, 846 F.3d at 926 (Hamilton, J., dissenting) ("The banks and securities businesses that won passage of SLUSA . . . . certainly did not win passage of language preempting state-law claims for breach of contract or fiduciary duty."); *see also generally Dabit*, 547 U.S. at 81-82 (discussing SLUSA's history and purpose).

[57] *Troice*, 134 S. Ct. at 1068-69 (SLUSA "maintains state legal authority, especially over matters that are primarily of state concern" and "[a] broad interpretation of [SLUSA] works at cross-purposes with this state-oriented concern"); *Rowinski*, 398 F.3d at 301 ("Federal securities law is circumscribed, and strikes a balance between uniform regulation of a national market and preservation of those areas 'traditionally left to state regulation,' such as corporate, contract and fiduciary law.") (quoting *Santa Fe Indus. Inc. v. Green*, 430 U.S. 462, 478-80 (1977)).

[58] *See Troice*, 134 S. Ct. at 1072 (Thomas, J., concurring) (noting that SLUSA's "in connection with" language "provides little guidance without a limiting principle consistent with the structure of the statute and its other provisions," and stating that the Court's majority opinion provided a limiting principle that is "consistent with the statutory framework and design" of SLUSA) (citations and internal quotation marks omitted).

### D. The Court Will Certify Its Opinion for Interlocutory Appeal

The Court agrees with Vanguard that this case should be certified for interlocutory appeal. The question of SLUSA's applicability to Plaintiffs' claim is undoubtedly controlling. And while the Court has no doubt that *Rowinski* is still good law, the Third Circuit has yet to revisit the framework established in that case in light of *Troice*. In the meantime, there is substantial ground for a difference of opinion regarding how *Troice* applies to claims such as those at issue here. Finally, a Third Circuit ruling would advance the termination of this litigation, as application of SLUSA would end this case at the pleading stage, rendering unnecessary discovery, class certification briefing, dispositive motion practice, and potentially trial. If SLUSA's applicability is at all uncertain, there is no point in forcing the parties to expend the time and resources required to litigate this class action to completion.[59]

## IV. CONCLUSION

Vanguard's motion will be denied to the extent it seeks reconsideration of the Court's May 26, 2017 decision, but granted insofar as Vanguard requests that the Court's opinion be certified for interlocutory appeal. An appropriate Order will follow.

---

[59] Vanguard has proposed questions for interlocutory appeal that, like many of its arguments, appear to be based on rulings the Court did not make. For example, Vanguard seeks a ruling regarding "whether the 'in connection with' standard can be met where the alleged misrepresentation did not concern a particular security" (there is no real dispute that it can). Doc. No. 18 at 17. Vanguard's framing of the issues is thus somewhat removed from the actual dispute in this case—whether SLUSA's "in connection with" requirement is satisfied where a plaintiff alleges $5.00 overcharges on brokerage commissions.